UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEANNE STRANSKI, | |
| Plaintiff | Case No. 07 C 4731 |
| v. | Honorable Judge Rebecca Pallmeyer |
| HOMER TOWNSHIP HIGHWAY DEPARTMENT, | Honorable Magistrate Judge Cole |
| Defendant | JURY DEMANDED |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES Defendant, HOMER TOWNSHIP HIGHWAY DEPARTMENT, by its attorneys, Lori A. Vanderlaan and Fritz V. Wilson, and for it's Motion for Judgment as a Matter of Law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, state as follows:

### I. Introduction

Plaintiff Roseanne Stranski brings suit against the Homer Township Highway Department, ("HTHD,") under Title VII alleging that she experienced sexual harassment due to the actions of Franklin Dunn while she was working at HTHD. She alleges that said conduct constituted an actionable hostile work environment, that she was constructively discharged, and that she suffered damages as a result. At the close of the Plaintiff's case in chief, the Plaintiff has failed to establish that Plaintiff was sexually harassed, that she suffered a hostile work environment, or that she was constructively discharged, or that she suffered damages. Consequently, as no reasonable juror could find for the Plaintiff, this Court should enter Judgment as a Matter of Law in favor of the Defendant.

## II. Standard of Review

This Court should grant the Defendant's Motion for Judgment as a matter of law if it concludes based on all of the evidence presented that there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff. Fed. R. Civ. P. Rule 50(a)(1), Murray v. Chicago Transit Authority, 252 F. 3d 880 (7th Cir. 2001).

## III. Statement of Relevant Facts

a. *Plaintiff's employment, resignation, and retirement*.

All facts are taken from the testimony in open Court. The Plaintiff, Roseanne Stranski, worked for the HTHD for eleven years, from 1993 to 2004. At the beginning of Plaintiff's employment, the HTHD had 13 employees. The Plaintiff admits that she voluntarily resigned on August 11, 2004, from the Homer Township Highway Department. She further admits that she provided no reason to her supervisor for why she resigned. The Plaintiff admitted that there was no culminating act taken by Frank Dunn or anyone else at the Homer Township Highway Department which caused her to resign. To the contrary, Plaintiff admits returning from a two week vacation on August 10, 2009. She admits to contacting Ethel Rodriguez that day, and asking her what she needed to do if she wanted to quit and retire. That evening, the Plaintiff decided to quit, and the following day, August 11, 2009, she typed a resignation letter which she then submitted to Mr. Dunn, effectively quitting her job.

After voluntarily resigning from HTHD, the Plaintiff proceeded to apply for benefits through the Illinois Municipal Retirement Fund ("IMRF.") The Plaintiff stated that the day she applied for benefits was the same time as when she decided to retire. That date was August 25, 2009, two weeks and one day after she voluntarily resigned. Plaintiff admits after her resignation

that she never once tried to look for another job. To this day, the Plaintiff is currently retired, having never sought work ever since leaving HTHD.

      b.     *Plaintiff's allegations of sexual harassment*

Plaintiff's claims ultimately arise out of a few separate, and isolated incidents. It should be noted that the Court has already ruled that the Plaintiff cannot recover for alleged acts taking place prior to January 30, 2004. See Order of October 21, 2009, Motion in Limine # 14. Consequently, the relevant time period for determining whether judgment is appropriate for Defendant is from January 30, 2004 to August 12, 2004. During that time period, Plaintiff only testified about four separate instances of conduct which she claimed to be sexual harassment, on March 24, 2004; July 13, 2004; July 14, 2004; and August 10, 2004. Plaintiff alleges that on March 24, Frank Dunn stroked her under the chin. On July 13, Frank Dunn allegedly told the Highway Department inspector that Plaintiff was sitting in his lap. On July 14, Mr. Dunn allegedly made an offhand comment about the Plaintiff feeding soup to another employee Richard Kerley, who denies in his testimony that this ever happened. On August 10, Mr. Dunn allegedly stated to someone on the telephone, who has not been called to testify by Plaintiff, that the only thing office workers had to do was sit in the boss's lap. Stranski admits that Dunn's conduct never interfered with her ability to do her job.

The Plaintiff admitted that at no time did she ever make any type of complaints to anyone at the Homer Township Highway Department about Frank Dunn's allegedly inappropriate conduct. She admits she did not feel comfortable going to Mr. Dunn. Mr. Dunn and Bill Greenwalt have testified there was a sexual harassment policy. Plaintiff admits that if such a policy existed, she did not follow it. See Sexual Harassment Policy of Homer Township Highway

Department, incorporated herein by reference. Plaintiff admits that she never made a single complaint to anyone, at any time about sexual harassment, thereby failing to follow the policy that was established for this purpose. Even if the events alleged by Plaintiff took place, Plaintiff never gave Homer Township Highway Department the opportunity to remedy these issues.

    c.    *Plaintiff's lack of damages*

The Plaintiff admitted that during the period of time that she worked at the HTHD, she was, "happy," and she had no emotional distress. Nothing Franklin Dunn ever did prevented her from doing her job and doing it well. She never experienced any problems fulfilling her employment related tasks. All of this was admitted by the Plaintiff on the stand. She admitted she is only claiming emotional distress for the 2 weeks after she quit.

This Court has acknowledged that the Plaintiff cannot bring suit for any personal injury. Moreover, the Plaintiff admitted that she was not bringing a claim for personal or bodily injuries in this case. The Court has also ruled that Plaintiff is not entitled to lost pay or compensatory damages for the period of time that she was not actively seeking work. See Order of October 21, 2009, Motion in Limine # 10 and # 11, incorporated by reference. The Plaintiff's own testimony establishes that this was no later than August 25, 2009, the date she chose to retire. Plaintiff has not introduced any evidence to calculate any lost pay claim. The Plaintiff also testified that any depression or sadness which she experienced as a result of her voluntary decision to resign from HTHD had resolved by August 25, 2009, the day she both signed up for IMRF and the date that she chose to retire. To date, Plaintiff has never sought any alternative employment, and has opted to remain in retirement ever since she left HTHD.

## IV. Argument

Judgment as a matter of law is appropriate for the Defendant for the following reasons:

1. Plaintiff has not established that she experienced a hostile work environment.

2. Plaintiff has not established that she was constructively discharged.

3. Plaintiff has suffered no damages.

## I. PLAINTIFF HAS NOT ESTABLISHED THAT SHE EXPERIENCED A HOSTILE WORK ENVIRONMENT.

In order to state a claim for hostile work environment based on sexual harassment, a plaintiff must prove, among other things, 1) that she was subjected to unwelcome sexual conduct, 2) because of her gender, 3) the conduct was sufficiently severe or pervasive to alter a term, condition, or privilege of employment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Plaintiff must establish that the conduct was both, "objectively and subjectively offensive." Id., Adusumilli v. City of Chicago, 164 F.3d 353 (1998). Simple teasing, offhand comments, and isolated incidents will not amount to discriminatory changes in the, "terms and conditions of employment." Adusumilli, at 362.

To be actionable, the conduct at issue must have the purpose or effect of unreasonably interfering with an individuals work performance or creating an intimidating, hostile, or offensive work environment. Murray v. Chicago Transit Authority, 252 F. 3d 880 (7th Cir. 2001). The conduct at issue must be sufficiently severe or pervasive that, "a reasonable person would find it hostile and [that] the victim [herself] subjectively sees it as abusive. Id., citing Ngeunjuntr v. Metropolitan Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998). In making this determination, courts look to, "the totality of the circumstances, including but not limited to the 'frequency of

the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id., citing Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998).

Moreover, in determining whether HTHD is liable, the court should consider the question of whether the harassment led to a tangible employment action. Murray v. Chicago Transit Authority, 252 F.3d 880 (7th Cir. 2001). When no tangible employment action is taken, Defendant may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, 1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and 2) that the Plaintiff failed to take advantage of any preventive or corrective opportunities provided by her employer to avoid harm otherwise. Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998), Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).

In Murray, the Plaintiff brought a claim for sexual harassment in violation of Title VII arising from a situation where her supervisor asked her to have drinks and dinner in order to receive compensation for expenses in relation to a business trip. Murray, at 884. When she refused, she was told, "you have to learn who is boss around here," and her request for expenses was denied. Subsequently, she decided to pay the expenses herself and in a subsequent conversation with the supervisor she was told, "it would have been a lot cheaper my way." Id., at 885. Following this series of incidents, Murray experienced a deterioration of work conditions, where she was publicly reprimanded at a meeting, deprived of voting rights for an important committee assignment for the CTA, and deprived of her CTA cellular telephone and car use. Id. As in this case, the CTA had a sexual harassment policy in force and yet Murray failed to take advantage of it. Id.

Under these facts, the Seventh Circuit upheld the trial court's directed verdict in favor of the employer. The court determined that the employer's conduct was not sufficient to constitute a sexually harassing work environment. Id., at 889. The Court noted that the offensive behavior was infrequent. Id. Moreover, as in this case, Murray never complained to any supervisor (or anyone else, except her husband) about the allegedly harassing behavior taking place. As such, judgment in favor of the employer was appropriate.

Here, Plaintiff complains of a series of isolated incidents, none of which affected her employment. She was able to perform her job, and perform it well, by her own admission. In fact, she admits that she enjoyed working at HTHD. Consequently, Plaintiff cannot allege a, "hostile work environment," if Plaintiff herself actually enjoyed her job and was, "happy," working there.

Moreover, Defendant is entitled to assert the affirmative defense established in Faragher/Ellerth that it had a policy in place to alleviate sexual harassment, which Plaintiff failed to utilize. Id. Plaintiff claims that she was afraid about complaining about the alleged harassing behavior, but, "subjective fears of confrontation, unpleasantness, or retaliation do not alleviate her duty under Ellerth to alert the employer to the allegedly hostile environment." Murray, citing Shaw v. Autozone, Inc., 180 F.3d 806, 813 (7th Cir. 1999). Consequently, Plaintiff has not established a hostile work environment at HTHD. Even if Plaintiff has established a hostile work environment, judgment is still proper due to Plaintiff's own failure to follow the policy which HTHD had established to address sexual harassment.

Judgment as a matter of law should be entered for Defendant.

## II. PLAINTIFF WAS NOT CONSTRUCTIVELY DISCHARGED.

Defendant maintains that Judgment as a matter of law is appropriate for Defendant since

Plaintiff has failed to establish a claim for sexual harassment based on hostile work environment. In the alternative, judgment in part is also proper because Plaintiff failed that she was constructively discharged. As a result, Judgment as a matter of law is proper for Defendant.

In order to prove that she was constructively discharged because of sexual harassment, a plaintiff must prove that unlawful discrimination made her work environment *so intolerable* that a reasonable person would be forced to resign. Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 789 (7th Cir. 2007) (emphasis added). The working condition must be, "unbearable," and, "even more egregious than the high standard for hostile work environment." Fischer v. Avanade, Inc., 519 F.3d 393 (7th Cir. 2007). For example, the Seventh Circuit has found that constructive discharge could exist where a Plaintiff's supervisor constantly made racist comments, and held a gun to the employee's head, Taylor v. W.S. Life. Ins. Co., 966 F.2d 1188, 1191 (7th Cir. 1992). Another example of constructive discharge involved, "repeated instances of grossly offensive conduct and commentary," culminating in a co-worker threatening to kill the Plaintiff. Brooms v. Regal Tube Co., 881 F.2d 412, 417 (7th Cir. 1989). However, if the conduct does *not* rise to this level, an employee is expected to remain employed while seeking redress, if in fact they do find the environment to be hostile or offensive. Boumehdi, 489 F.3d at 789. An employees failure to object or take action to redress the alleged harassment is evidence that the same did not rise to the intolerable level necessary to establish a constructive discharge claim. Mosher vs. Dollar Tree Stores, Inc., 240 F.3d 662 (7th Cir. 2001).

In this case, the Plaintiff provides no evidence to suggest that she was constructively discharged. By definition, this is impossible when the Plaintiff herself admits that she was able to perform her job at HTHD, and even that she, "liked working there," and she was happy. The isolated incidents testified about by Plaintiff do not rise to the level of being so offensive that a

reasonable person would not be expected to remain employed. Ultimately, this is a situation where the Plaintiff chose to voluntarily resign, separate and apart from any alleged harassing behavior. She never objected nor did she take action to redress the problem. Additionally, the Plaintiff identified no specific reason for her decision to leave in her testimony. Instead, she admits to returning from a two week vacation and then resigning. There is simply no way that she can claim that her work environment was so egregious to satisfy the Seventh Circuit's high standard for constructive discharge.

For these reasons, Judgment as a matter of law is appropriate for the Defendant.

### III. THE PLAINTIFF HAS NOT SUFFERED DAMAGES.

In order for the jury to return a verdict in her favor, the Plaintiff must establish that she has suffered damages. However, there is no evidence in the record that the Plaintiff has suffered damages. Judgment in favor of Defendant is therefore proper.

At the outset, the Plaintiff herself admitted on the stand that she has suffered no personal or bodily injury, and the Court had previously ruled that she was not trying to recover for personal injury in it's October 21, 2009 order on Motions in Limine. See Order of October 21, 2009 incorporated herein by reference.

Second, it is Plaintiff's burden to prove damages caused by alleged discrimination, measured by the difference between Plaintiff's actual earnings for the period and those which Plaintiff would have earned but for the discrimination. Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc., 755 F.2d 599 (7th Cir. 1985). The Plaintiff herself has proffered no evidence that she is entitled to either back pay, or front pay or any type of damages relating to her time off work. The Court has granted Defendant's Motions in Limine # 10 and # 11, holding that the Plaintiff cannot recover for periods of time when she was not seeking employment, and

limiting her ability to recover back pay and front pay. The Plaintiff's own testimony confirms that Plaintiff is not entitled to either back pay or front pay. She voluntarily retired, did not seek alternative employment, and has no plans to seek new employment of any kind. She intends to remain retired. Consequently, any type of damages relating to Plaintiff's wages, whether in the form of back pay or front pay, would be inappropriate.

Thirdly, the Plaintiff has failed to establish that she suffered any type of emotional distress as a result of Mr. Dunn's alleged conduct. The Plaintiff herself admitted in open court that she was happy and had no emotional distress, sadness, slip issues, or depression while working. She was not constructively discharged so she cannot recover for any claims of emotional distress after she quit. The Plaintiff further admitted that any feelings of depression or sadness resulting from her voluntary termination abated when she applied for IMRF benefits on August 25, 2009. During that time period, she never sought any type of counseling or treatment for emotional distress. No other time periods may be considered in determining her claimed damages for emotional distress, because the Plaintiff cannot recover for damages beyond 300 days prior to filing her claim, or January 30, 2004.

WHEREFORE, the Defendant, HOMER TOWNSHIP HIGHWAY DEPARTMENT, requests that this Court grant this Motion and further find pursuant to Rule 50 of the Federal Rules of Civil Procedure that there is no legally sufficient evidentiary basis for a jury to find for the Plaintiff in this case, and therefore, enter Judgment as a Matter of Law in favor of the Defendant, and for such other and further relief as this Court deems proper.

    Respectfully Submitted,
    HOMER TOWNSHIP HIGHWAY
    DEPARTMENT,

    By:   /s/ Lori A. Vanderlaan
        One of Its Attorneys

## CERTIFICATE OF SERVICE

      I, the undersigned, an attorney, certify that I caused to be served the foregoing document(s) with attachment(s) referred to therein, if any, by mailing copies to the attorney(s) of record at the address(es) of record and by depositing same into the U.S. Mail, with proper postage, prepaid at 2100 Manchester Road, Ste. 1420, Wheaton, Illinois 60187, on this <u>13th</u> day of <u>November</u>, 2009.

                                              <u>/s/ Lori A. Vanderlaan</u>