UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEANNE STRANSKI, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 4731 |
| | ) |
| HOMER TOWNSHIP HIGHWAY | ) Judge Rebecca R. Pallmeyer |
| DEPARTMENT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On August 21, 2007, Plaintiff Roseanne Stranski ("Plaintiff" or "Stranski") filed a complaint against her former employer, Defendant Homer Township Highway Department ("Defendant"). Stranski alleged that Franklin Dunn, the Highway Commissioner at the time of her employment, sexually harassed her at work in violation of Title VII. The case proceeded to trial and on November 17, 2009, the jury returned a verdict for Defendant. Stranksi has now moved for a new trial. The court reviews the facts in a light most favorable to the jury's verdict, as "[i]f there is a reasonable basis in the record for the jury's verdict, it must stand." *Savino v. C.P. Hall Co.*, 199 F.3d 925, 935 (7th Cir. 1999), *citing Dallis v. Don Cunningham & Assoc.*, 11 F.3d 713, 715 (7th Cir. 1993). For the reasons explained below, Stranksi's motion is denied.

## FACTS

The following facts are drawn from Plaintiff's Complaint and the trial record. Stranski began working for the Highway Department on August 10, 1993 as a part-time employee, hired to answer the phone and file paperwork. (Am. Compl. ¶ 5; Trial Tr. 5, 11, Aug. 12, 2009.) Dunn directly supervised Stranski, and Stranski interacted with him everyday.[1] (Trial Tr. 6, 12, 82, Aug. 12,

---

[1] Stranski testified that there was a conference room between Dunn's office and the one she shared with her co-workers, but Dunn would "always come in and greet [them] and talk to

(continued...)

2009.)  Stranski testified that beginning in 1999, Dunn sexually harassed her repeatedly.  (Am. Compl. ¶ 7; Trial Tr. 12–13, 26, Aug. 12, 2009.)  She alleged that Dunn touched her neck and leg, pinched her buttocks, pulled her earrings, and grabbed her waist on various occasions.  (Trial Tr. 12–13, 40, 50–51, Aug. 12, 2009.)  She testified that Dunn's touching was always unwelcome, providing one example as an illustration:

> [Dunn] would come up behind me, and would grab the back of my neck and rub the back of my neck.  And then he would bend down really close to my ear, and he would whisper in my ear . . . and would say, "Cold hands, warm heart.  Don't you just love this Rosie?"

(Trial Tr. 16, Aug. 12, 2009.)  She testified that in response to these episodes, she told Dunn: "'Frank, don't touch me.  Frank, what would your mother think of this?'"  (Trial Tr. 17, Aug. 12, 2009.)  Dunn acknowledged that he did in fact touch Stranski's neck once, but claimed she responded by saying: "'Oh, that feels good.'"  Dunn denied ever whispering in Stranski's ear, playing with her earrings, or touching her buttocks.  (Trial Tr. 18–20, 34, 66, Aug. 9, 2009.)  Both Stranski and Dunn agreed that some employees at the Department referred to Dunn as a "dirty old man," but Dunn stated he would simply "laugh it off" when people in the office referred to him that way.  (Trial Tr. 44, 77, Aug. 9, 2009; Trial Tr. 43, Aug. 12, 2009.)  From Dunn's perspective, the office was "one big happy family" (Trial Tr. 20, Aug. 9, 2009) that "played together," and no one was "afraid" of him.  (Trial Tr. 77, Aug. 9, 2009.)

Stranski's testimony was at odds with this benign characterization.  She claimed that she was embarrassed and humiliated by Dunn's behavior.  (Trial Tr. 25, 29, 31, 33, 47, 50, Aug. 12, 2009.)  According to Stranski, Dunn asked her to sit on his lap many times at work.  She claimed that she once overheard Dunn tell a potential job applicant on the phone that "[t]he only qualification to be a secretary for the highway department was to sit on his lap all day."  (Trial Tr. 32, 45, Aug.

---

[1](...continued)
[them] for . . . maybe a half-hour before he would go into his office."  (Trial Tr. 10, 12, Aug. 12, 2009.)

12, 2009.) Stranski testified that on March 30, 2004, Dunn approached her with "tickets" in his hand and said, "'before I give them to you, you'll have to sit on my lap,'" at which point she "blew up," grabbed a pair of scissors in her desk drawer and threatened to injure Dunn unless he stayed away from her.[2] (Trial Tr. 55, Aug. 12, 2009.) Dunn admitted that he asked Stranski to sit on his lap "a couple of times," but, he insisted, she never complained or objected. (Trial Tr. 20, 22, Aug. 9, 2009.) As to the incident with the scissors, he recalled the circumstances differently:

> When she come [sic] into the office . . . I was sitting at her desk . . . . At that point she went past me and angrily said, "You are sitting in my chair." So I said, "Okay. It looks like if you want it back, you are going to have to sit on my lap."

(Trial Tr. 136, Aug. 11, 2009.) Dunn explained that his statement was intended as only a "humorous joke." (Trial Tr. 17, Aug. 9, 2009.)

The jury heard conflicting testimony about the nature and extent of the sexual jokes occurring at the office. Stranski testified that on more than one occasion when she and a co-worker, Richard Kerley, worked in a file room together, Dunn would walk in, turn off the lights, and hold the door closed so that they could not get out, suggesting to Stranski and Kerley: "Oh, now you can have sex together." (Trial Tr. 37, Aug. 12, 2009.) According to Dunn, he did close the door and turn the lights off on Stranski and Kerley, but he intended it to be a humorous prank and denied ever holding the door shut or joking about the two having sex.[3] (Trial Tr. 35–36, Aug. 9, 2009.) Yet Stranski testified that Dunn often made inappropriate sexual jokes at her expense.[4] She recalled,

---

[2] Stranski did not specify in further detail the type of tickets at issue or why Dunn wanted to give them to her, and Dunn never mentioned offering Stranski tickets. Stranski testified that she said to Dunn: "'Frank, I'm getting just like Beth.'" Stranski stated that she knew Dunn would understand her to mean that his harassment of her had become similar to that of another co-worker, Elizabeth Marchbank, who had also charged Dunn with sexual harassment. (Trial Tr. 55–56, Aug. 12, 2009.)

[3] Dunn did not indicate how many times he pulled this particular prank on Stranski and Kerley.

[4] The jury heard testimony from Stranski and Dunn that he would tease her about
(continued...)

3

for example:

> Frank had two decks of cards. One deck was large-breasted women, and the other deck was small-breasted women. Frank would come out of his office and put the two decks of cards in front of me with his two hands, one in each hand, and he'd go: "Okay, Rosie. Which one are you, [a] big-breasted [woman] or [a] little-breasted [woman]?"

(Trial Tr. 47, Aug. 12, 2009.) Dunn himself admitted to having nude pictures of women that he kept in his desk, but explicitly denied showing any pictures to Stranski, and claimed that if she saw the pictures, she must have looked through his office drawers on her own. (Trial Tr. 85–86, Aug. 9, 2009.) Dunn similarly denied comparing Stranski to women on the deck of cards, as she suggested. (Trial Tr. 86, Aug. 9, 2009.) Stranski claimed that Dunn also received faxes at the office that had "drawings on them of people engaging in sex or a funny . . . sexual-type joke," and sometimes dropped the pictures or jokes on her desk.[5] (Trial Tr. 48–49, Aug. 12, 2009.) When asked at trial by opposing counsel if he kept "cartoons of adults being involved in sexual activities together" in his office at work, Dunn did not completely deny such behavior; rather, he responded: "No, not available . . . . They were kept in an area of which was not for public knowledge or notification . . . . They would be kept in my office, which is a private office, in a file, and nobody was supposed to be in there." (Trial Tr. 78–79, Aug. 9, 2009.)

At trial, Defendant pointed out that Stranski never made any written or oral complaints about Dunn's behavior to anyone in the Highway Department. (Trial Tr. 99, Aug 12, 2009.) There was conflicting testimony about the existence of a sexual harassment policy that would have invited or encouraged such complaints. Stranski testified that she did not know of the Department's policy,

---

[4](...continued)
finding a UPS driver attractive. (Trial Tr. 28, Aug. 12, 2009; Trial Tr. 41, Aug. 9, 2009.) Stranski testified that Dunn once joked to a salesman that Stranski was wearing a bikini in the office. (Trial Tr. 29–31, Aug. 12, 2009.)

[5] Stranski did not state at trial how often Dunn would receive these faxes or leave the jokes on her desk.

nor did she see one posted anywhere in the office. (Trial Tr. 58, Aug. 12, 2009.) Dunn testified that the Department did have a sexual harassment policy, though it was not written until sometime in 2003. (Trial Tr. 73, Aug. 9, 2009.) Dunn acknowledged that he himself was the highest-ranking elected official at the Department to whom sexual harassment complaints should have been addressed, but Defendant noted that Stranski could also have complained to another elected official, Ethel Rodriguez (the clerk of Homer Township). (Trial Tr. 6, 9, Aug. 9, 2009; Trial Tr. 108, 127–28, Aug. 12, 2009.)

Stranski explained to the jury that upon learning that Kerley was no longer employed at the Highway Department on August 8, 2004, she decided she had to quit because she thought of Kerley as her "protector" from Dunn. (Trial Tr. 66, 111, Aug. 12, 2009.) Defendant offered evidence that Stranski had personal reasons for resigning, unrelated to her experience with Dunn. Dunn testified that Stranski "never indicated that she was resigning because he sexually harassed her," and that she told him instead that she needed to care for her elderly parents. (Trial Tr. 166–67, Aug. 11, 2009.) Stranski rejected Dunn's assertion about her family obligations, but acknowledged that she did not tell Dunn that she was resigning because of his behavior. (Trial Tr. 73–74, 113, Aug. 12, 2009.) Stranski ultimately resigned from the Highway Department on August 11, 2004, and subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the Highway Department on November 23, 2004. (Am. Compl. ¶¶ 11, 12.)

## DISCUSSION

As noted, the jury found in favor of Defendant at trial. Stranski now seeks a new trial pursuant to FED. R. CIV. P. 59(a), arguing that the "undisputed and unrefuted evidence" presented at trial weighs against the jury's verdict. (Pl.'s Mot. for New Trial at 2.) Stranski faces an uphill battle here; regardless of the court's own view of the evidence, a jury verdict is not set aside lightly. The court may order a new trial "if the jury's verdict is against the clear weight of the evidence," *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003); however, "[a] verdict will be set aside

5

as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore v. Tuleja*, 546 F.3d 423, 428 (7th Cir. 2008), *citing King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006).

The court concludes that Stranski has not demonstrated a compelling reason for disturbing the jury's verdict in this case. Stranski argues that Dunn's sexual harassment was "regular, repeated, pervasive, severe and objectively offensive," (Pl.'s Mot. for New Trial at 3), but Dunn flatly denied the tenor and extent of most of Stranski's allegations regarding physical touching, and the jury was entitled to credit his testimony.[6] The handful of events that Dunn agreed actually occurred, such as turning the lights off in a file room while Stranski and Kerley worked together, were, Dunn claimed, jokes not intended to be offensive. (Trial Tr. 136, Aug. 11, 2009.)

"Jury verdicts deserve particular deference in cases with 'simple issues but highly disputed facts,'" such as this one. *Moore*, 546 F.3d at 428, *citing Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995). The court is not free to set a jury's verdict aside because it might have reached a different result had it been the trier of fact. *Kaizer*, 58 F.3d at 315. Thus, while the court need not condone Dunn's behavior in this case, the court also does not find it impossible for a reasonable jury to have found from the evidence that Dunn's actions were not sufficiently severe or pervasive to create a hostile work environment. Without objection from Plaintiff, the jury was instructed that in order to render a verdict for Plaintiff, they were required to find that Dunn's conduct was severe or pervasive, and that it rendered her work environment "so intolerable that a reasonable person in Plaintiff's position would have had to quit." The jury could reasonably have concluded that test was not met here. There was evidence that Stranski had personal reasons, unrelated to Dunn's

---

[6] At trial, Dunn specifically denied the following alleged acts: whispering in Stranski's ear, pulling her on his lap while getting his ID picture taken, seeing Stranski cry, playing with her earrings, pulling her leg, touching her buttocks, instructing Stranski to lie on a table while he folded a flag on top of her, showing Stranski pictures of naked women, and cornering her in an office. (Trial Tr. 19, 21, 22, 34, 66, 70, 76, 85, Aug. 9, 2009.)

conduct, for leaving her job, and her failure to seek a new position arguably confirmed that she resigned, not out of frustration with Dunn, but because she no longer wished to work full time. As Defendant notes in its response to Plaintiff's motion for a new trial, Stranski made no formal complaints about Dunn's conduct until months after she resigned. (Def.'s Resp. to Pl.'s Mot. for New Trial 21, citing Trial Tr. 108–09, Aug. 12, 2009.) The jury could have concluded from Plaintiff's silence that the conduct was not so offensive as to interfere with her work environment.

Moreover, Plaintiff's failure to voice more formal complaints also supported Defendant's affirmative defense to Stranski's claims. There was evidence from which the jury could conclude that a sexual harassment policy existed at the Department during at least some period of the time that Stranski was employed; Stranski testified that she was not aware of such a policy, but Defendant introduced the policy in evidence, and Dunn testified that it existed at least as early as 2003. (Def.'s Trial Ex. 3; Trial Tr. 73, Aug. 9, 2009.) The jury was instructed that: (1) if Defendant proved it exercised reasonable care to prevent and correct any harassing conduct in the workplace, and (2) Plaintiff unreasonably failed to take advantage of opportunities provided by Defendant to prevent or correct harassment or otherwise avoid harm, then it should find in favor of Defendant. (Def.'s Instruction 34, Docket No. 102.) Under the *Faragher/Ellerth* framework (*see Burlington Industries Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)), an employer has an affirmative defense to liability when "[a supervisor's] harassment is not accompanied by, or does not result in, any tangible employment action," such as "discharge, demotion, or undesirable reassignment." In those circumstances, the employer can defeat plaintiff's case by showing that it "exercised reasonable care to prevent and correct" misconduct and that the employee "unreasonably failed to take advantage of corrective opportunities . . . ." *Jackson v. County of Racine*, 474 F.3d 493, 501 (7th Cir. 2007).

In this case, there was evidence from which the jury could have found that the alleged harassment did not result in a "tangible employment action." Stranski was not discharged or

demoted, and the jury could fairly have concluded she resigned for reasons independent of Dunn's conduct. The jury could also have found that Highway Department's sexual harassment policy was available to her for at least a full year before she resigned, yet she failed to avail herself of the opportunity to file a complaint.

## **CONCLUSION**

For the reasons explained above, the court concludes that there was a reasonable basis for the jury's verdict in this case. Plaintiff's motion for a new trial [109] is denied.

ENTER:

Dated: September 14, 2010

_____
REBECCA R. PALLMEYER
United States District Judge